IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| VALLEY NATIONAL BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:20-CV-961-RAH-KFP |
| | ) | |
| PIOTR CZAPLA, SUSAN M. CZAPLA, | ) | |
| and QUALITY HOME HEALTH CARE, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

This Court previously granted Valley National Bank's Motion for Default Judgment as to Defendant Quality Home Health Care, Inc., and its Motion for Summary Judgment as to Defendants Piotr and Susan Czapla. It awarded damages of $254,511.54, which included $181,523.91 in principal, $887.25 in late fees, and $4,360 in expenses. The Court also awarded pre-judgment interest and attorneys' fees and referred the matter back to the undersigned Magistrate Judge for a recommendation on the amount of interest and attorneys' fees, which were to be calculated after submission of an appropriate interest calculation and evidentiary materials by Valley National. Having reviewed Valley National's submissions on the interest rate and attorneys' fees, the undersigned RECOMMENDS as follows:

## I.   PRE-JUDGMENT INTEREST

Defendants made no argument in opposition to Valley National's request for pre-judgment interest in their summary judgment responses, and they filed no objection to the

Magistrate Judge's Recommendation. Through affidavit testimony, Valley National has established that the original interest rate on Defendants' first commercial loan was 6.25% per annum. Doc. 81 at 8. The original interest rate on the second loan was 5.0% per annum. *Id*. Under the loan documents, the interest rate on both loans increased to 18% upon default. *Id*. Valley National sent Defendants a demand letter on September 16, 2019, notifying them that they were in default, accelerating the amounts due under the loan documents, and demanding full payment within ten days.

At the foreclosure sale on October 23, 2020, the amount due on the first loan included $350,445.14 in principal and $78,994.70 in interest ($9,380.00 at the note rate of interest and $69,614.70 at the default rate of interest). The Bank was the successful bidder at the foreclosure sale, and the credit bid of $292,100 was applied first to pay the interest due and then to the principal, leaving a principal balance of $137,339.84.

The interest due on the first loan under the default rate of interest from October 24, 2020, through January 27, 2023, is $56,746.13. The interest due on the second loan under the note rate of interest through September 16, 2019, is $120.80, and the interest due on the second loan under the default rate from September 17, 2019, to January 27, 2023, is $26,965.71. Thus, the total amount of interest due through January 27, 2023, is $83,832.64.

Under the default rate, interest accrues on the first loan at the rate of $68.70 per diem and on the second loan at the rate of $22.09 per diem, for a total of $90.79 per diem. Thus, since January 28, 2023, an additional $8,806.63 has accrued, for a total of $92,639.27 in interest through May 3, 2023.

## II.    REASONABLE ATTORNEYS' FEES AND EXPENSES

Alabama law provides that attorney fee provisions are enforceable. *Jones v. Regions Bank*, 25 So. 3d 427, 441 (Ala. 2009) (citations omitted). However, "attorney's fees are recoverable . . . subject to Alabama's imposition of a reasonableness constraint on all fee shifting contracts, as a matter of public policy." *PNC Bank v. Classic Crab, Inc.*, No. 15-CV-459-KD-C, 2016 WL 4257360, at *4 (S.D. Ala. Aug. 11, 2016) (citing *Willow Lake Residential Ass'n, Inc. v. Juliano*, 80 So. 3d 226, 241 (Ala. Civ. App. 2010) (recognizing that "Alabama law reads into every agreement allowing for the recovery of attorney's fees a reasonableness limitation")).

The calculation of reasonable attorney's fees is within the sound discretion of the court. *Yates v. Mack*, No. 1:20-CV-131-KD-B, 2022 WL 2308292, at *7 (S.D. Ala. June 27, 2022) (citing *Dowdell v. City of Apopka, Fla.*, 698 F.2d 1181, 1187 (11th Cir. 1983)). The Supreme Court has established the "lodestar" approach as the appropriate method of determining reasonable attorney's fees. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983)). Under this approach, the starting point requires a court to determine the lodestar figure, which equals the reasonable hourly rate multiplied by the hours reasonably expended, yielding a presumptively reasonable fee. *Id.*; *see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

The party seeking to recover attorney's fees bears the burden of establishing entitlement to the fees and documenting the appropriate hours and hourly rates. *Gartman v. Brady*, No. 2:18CV534-MHT, 2022 WL 4000349, at *2 (M.D. Ala. Sept. 1, 2022)

(quoting *Am. C.L. Union of Georgia v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (in turn quoting *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988)). A party may carry this burden by "producing either direct evidence of rates charged under similar circumstances or opinion evidence of reasonable rates." *Duckwork v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (citing *Norman*, 836 F.2d at 1299). An applicant is required to "suppl[y] the court with specific and detailed evidence from which the court can determine the reasonable hourly rate," as well as "records to show the time spent on the different claims[ ] and the general subject matter of the time expenditures." *Gartman,* 2022 WL 4000349, at *2 (citations omitted). The general subject matter of the time entry must be "set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303.

Additionally, when faced with an unreasonably high fee request, "a court may perform an hour-by-hour analysis or make an across-the-board cut to the requested hours." *Yates*, 2022 WL 2308292, at *7 (quoting *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008)). "Likewise, where the rates or hours claimed seem excessive or lack the appropriate documentation, a court may calculate the award based on its own experience, knowledge, and observations." *Id*. (citing *Norman*, 836 F.2d at 1299). "The court . . . is itself an expert on the question and may consider its own knowledge and experience concerning reasonableness and proper fees and may form an independent judgment either with or without the aid of witnesses." *Norman*, 836 F.2d at 1303 (citations omitted); *see also Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (recognizing that court may use its knowledge and expertise to come to independent judgment about reasonableness of

requested attorney's fees). However, district courts "need not, and indeed should not, become green-eyeshade accountants," as the goal is "to do rough justice, not to achieve auditing perfection." *Beckwith v. Soc. Sec. Admin., Comm'r*, No. 5:20-CV-1696-HNJ, 2022 WL 4285602, at *3 (N.D. Ala. June 22, 2022) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). Accordingly, a court may consider its "overall sense of a suit[ ] and may use estimates in calculating and allocating an attorney's time." *Id.*

Finally, although the lodestar method effectively replaced the balancing test used in *Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir. 1974), the lodestar figure may be adjusted in consideration of the *Johnson* factors. *Laird v. Jiya Jeel, LLC*, No. CV 1:22-259-KD-N, 2022 WL 17650573, at *5 (S.D. Ala. Dec. 13, 2022); Y*ates*, 2022 WL 2308292, at *7; *see also Norman*, 836 F. 2d at 1303 (stating that, "[i]n evaluating comparability of the market rates being attested to, [courts] may wish to consider any of the *Johnson* factors to the extent that they suggest that comparables offered may not be relevant to the issues before the court or as they may affect the weight to be given to the comparables being offered the court") (citation omitted). The *Johnson* factors include time and labor required; novelty and difficulty of the questions; skill required; preclusion of other employment due to acceptance of the case; customary fee; existence of a contingent-fee contract; time limitations; amount of damages and type of relief involved and the results obtained; experience, reputation, and ability of the attorneys; undesirability of the case; nature and length of the professional relationship with the client; and awards in similar cases. *Id.* at 1299–1300.

## III.    LODESTAR CALCULATION

### A.    REASONABLE HOURLY RATES

The Court must first determine the reasonable hourly rates to apply to the time billed in this case. The submitted billing records reflect that twelve billing professionals, including attorneys, paralegals, and a law clerk, worked on this matter for a total of 311.4 hours during the approximate three years since it began, with fees totaling $90,812.09.

#### 1.    Hourly Rates for Attorneys

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299; *Gartman*, 2022 WL 4000349, at *5. Here, Valley National seeks recovery of attorneys' fees based on hourly rates in the range of $400 to $442 for Ellsworth Summers, an attorney with over twenty years of experience in creditors' rights and bankruptcy; $289 to $332 for Hanna Lahr and James Roberts, both of whom had approximately six years of experience when they began working on this case; $250 to $264 for Anna Akers, an attorney with three years of experience when she began working on the case; and $234 for Andrew Cicero, an attorney with three years of experience when he began working on the case. All these attorneys practice in the specialty area of creditors' rights and bankruptcy. Valley National has submitted no direct evidence of rates charged under similar circumstances and, other than their own declarations attesting to the reasonableness of the fees charged, no opinion evidence of reasonable rates. Thus, the Court will rely on its own knowledge and experience in assessing the reasonableness of the hourly rates.

Based on Valley National's declarations outlining the experience level of each attorney, the type of work reflected in the submitted billing invoices, and the Court's own experience and knowledge of this case, the undersigned concludes that the above hourly rates are reasonable and in line with the prevailing market rate in the legal community for similar services by lawyers of reasonably comparable skill, experience, and reputation. In reaching its conclusion, the Court has also considered the *Johnson* factors, including the customary fee charged by lawyers to perform similar legal services properly, the skill required for this case, the results obtained, and the experience of the attorneys who worked on this matter, and it finds that no departure from the rates charged is necessary.

### 2. Paralegal and Law Clerk Hourly Rates

Valley National also seeks recovery of legal services performed by four paralegals and one law clerk. They have submitted billing records with hourly rates in the range of $204–$240 for Meredith Gunnells, a paralegal employed at the firm over fourteen years when she began working on this file; $245 for Susan Goolsby, a paralegal with over thirty years of experience; $170 to $190 for Lauren Mertins, a paralegal with three or four years of experience when she began working on the file; $213 for Michel Ivey, a paralegal with approximately twenty years of experience; and $150 for Zacharay Warren, a law clerk who had completed his first year of law school.

As an initial matter, the Court finds that the hourly rate for the law clerk is reasonable for the work he performed. The billing records reflect that he devoted 9 hours to drafting portions of the summary judgment motion and that other attorneys in the firm spent approximately 15 additional hours finalizing the motion and brief, for a total of 25

hours. As this is not an unreasonable amount of time to have spent on the summary judgment motion filed in this case, it does not appear that the law clerk's time is duplicative. Therefore, $150 per hour is reasonable for the work he performed.

With respect to the paralegal billing, the most noticeable issue is that the hourly rates are only slightly below the hourly rates of some of the attorneys. Andrew Cicero and Anna Akers, both of whom had at least three years of experience, billed at the rates of $234 and $250 an hour, respectively. This fact alone makes the paralegal rates of $240 and $245 seem unreasonable. For example, Mr. Cicero's billing entries indicate that he analyzed rules and case law and drafted motions to be filed with the Court, while very little of the work performed by the paralegals required any degree of legal skills, judgment, or discretion. In fact, as discussed in detail below, the paralegal time entries are predominantly clerical in nature. When an associate bills $234 per hour to review case law and draft a motion, $230 per hour for a paralegal to prepare a foreclosure ad for a newspaper and draft a summons is unreasonable. Accordingly, based on its own experience, the time entry descriptions submitted to the Court, and the amount of work performed by the more experienced paralegals as compared to the less experienced paralegal,[1] the Court concludes that an across-the-board rate of $125 is a reasonable hourly rate for the work performed by paralegals in this case. *See, e.g., J. P. as next friend of A.W. v. Elmore Cnty. Bd. of Educ.*, No. 2:19-CV-636-MHT, 2021 WL 2012303, at *6 (M.D. Ala. May 20, 2021) (approving

---

[1] Only 0.9 hours of time was billed by a paralegal with three years of experience. The remaining time was billed by paralegals with at least fourteen years of experience. *See* Doc. 81 at 4, 41. Thus, the Court will recommend an across-the-board rate appropriate for the more experience paralegals.

as reasonable unchallenged paralegal rate of $80 per hour); *Weekes-Walker v. Macon Cnty. Greyhound Park, Inc.*, 31 F. Supp. 3d 1354, 1360 (M.D. Ala. 2014) (stating that paralegals in the Middle District of Alabama may expect to receive between $50 and $85 an hour and finding it reasonable for a law clerk to bill at the rate of $100 per hour and a paralegal to bill at the hourly rate of $85); *see also Troxel v. Gunite Pros, LLC*, No. 21-CV-57-WS-N, 2022 WL 17416492, at *4 (S.D. Ala. Dec. 5, 2022) (rejecting a $145 hourly rate for a paralegal and noting that, absent a showing of some extraordinary qualification or expertise, the standard lodestar hourly rate for a paralegal in the Southern District is $75 and, further, that law clerk time is compensated at the paralegal rate) (citations omitted); *Nicholson v. RB2, LLC*, No. 1:19-CV-344-TFM-N, 2021 WL 895602, at *6 (S.D. Ala. Mar. 9, 2021) (approving $125 hourly rate for paralegal with more than twenty years of experience and a law degree); *Whitford v. Sub-Line Assocs., Inc.*, No. CV-15-BE-1678-S, 2017 WL 3620367, at *2 (N.D. Ala. Aug. 23, 2017) (approving $100 hourly rate as reasonable for paralegal); *Briggins v. Elwood TRI, Inc.*, 3 F. Supp. 3d 1277, 1295 (N.D. Ala. 2014) (holding that an across-the-board rate of $125.00 per hour for paralegal time, regardless of the experience or skill of each paralegal, was excessive and reducing the hourly rate for paralegals to $100.00).

## B.   REASONABLE HOURS EXPENDED

Next, the Court must determine whether the hours expended are reasonable and, therefore, compensable. The fee applicant is expected to exercise "billing judgment" by excluding "'excessive, redundant or otherwise unnecessary' hours," which are hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of

the skill, reputation or experience of counsel." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434, 437 (1983)). If this has not been done, the court must "cut the amount of hours for which payment is sought, pruning out those that are 'excessive, redundant, or otherwise unnecessary.'" *Am. C.L. Union of Georgia*, 168 F.3d at 428.

The attorneys in this case have represented Valley National from the initial collection efforts through foreclosure, Defendants' bankruptcy case, and this civil action, in which it achieved a default judgment against Quality Home Health Care, Inc., and summary judgment against the Czaplas. In support of its request for attorney's fees at the default judgment stage, Attorney James Roberts submitted an affidavit declaring the fees and expenses to be reasonable, but he submitted no itemized bills. With its second motion for default judgment, Attorney Hanna Lahr submitted an affidavit similar to Mr. Roberts's affidavit, again with no itemized billing. As a result, the Court ordered Valley National to supplement its filings with itemized bills, redacted to protect privileged information. Doc. 64. Based on the final declaration submitted in support of its fee request, the total amount of claimed attorney's fees is $90,812.09 plus $6,667.18 in expenses (Doc. 81).[2]

### 1.    Redacted Time Entries

Although the Court instructed Valley National to redact its invoices to protect privileged information, its attorneys must have been aware that the Court would rely on

---

[2] With this declaration, Lahr submitted redacted, itemized invoices for time billed through November 30, 2022. Doc. 81 at 2 and Ex. B. She asserts the firm billed an additional $2,160.80 after November 30, but she attached no itemized billing for this time. Lahr explained that, due to her firm's billing cycles, this additional amount had not yet been paid by Valley National, but she offered no explanation for the inability to attach itemized invoices for the Court's review. *See* Doc. 81.

their time entry descriptions to make a reasonableness determination. Nonetheless, many of the submitted time entries are so heavily redacted that the court cannot even determine the task performed. For example:

| | | |
|---|---|---|
| 10-01-19 | Analysis related to [redacted] | 1.0 |
| 10-01-19 | Analyze [redacted] | 1.9 |
| 10-03-19 | Analyze issues with [redacted] | 0.5 |
| 10-03-19 | Analyze issues re: [redacted] | 0.2 |
| 10-10-19 | Analyze issues re: [redacted] | 0.4 |
| 10-14-19 | Analyze [redacted] | 0.4 |
| 10-14-19 | Analyze issue re: [redacted] | 0.3 |
| 10-21-19 | Analyze [redacted] | 0.5 |
| 10-29-20 | [Complete redaction] | 0.5 |
| 11-20-19 | Work on [redacted] | 0.6 |
| 12-24-19 | Analyze [redacted] | 0.1 |
| 12-26-19 | Analyze issues re: [redacted] | 0.4 |
| 01-06-20 | Work on notice of appearance for H. Lahr [redacted] | 0.6 |
| 01-06-20 | Analysis of [redacted] | 0.5 |
| 01-31-20 | Analyze [redacted] | 0.1 |
| 03-03-20 | Prepare documents for [redacted] | 0.8 |
| 04-29-20 | Analysis related to [redacted] | 1.0 |
| 05-12-20 | Analyze [redacted] | 0.3 |
| 09-28-20 | Review [redacted] | 0.2 |
| 10-29-20 | Analyze [redacted] | 0.8 |
| 12-02-20 | Follow up concerning [redacted] | 0.2 |
| 12-18-20 | Perform searches [redacted] | 1.0 |
| 01-05-21 | Search [redacted] | 0.4 |

While the Court will not set out line-by-line examples from the full three years of billing, the remainder of the invoices contain similar redactions.[3]

---

[3] For example, in May 2022, Lahr billed 1.2 hours to "begin preparing [redacted]," 1.3 to "continuing preparing [redacted]," and 4.0 to "finalize preparations [redacted]," for a total of 6.5 hours. Similarly, Gunnells billed 2.0 hours to "begin preparing [redacted]," 0.7 to "continue preparing [redacted]," 1.5 to finishing preparing [redacted]," and 0.4 for "search [redacted]," for a total of 3.9 hours. Doc. 67-2 at 7–9. Certainly, the attorneys could have provided some type of unprivileged description or summary for this 10.4 hours of work that would have allowed the Court to discern the task being performed.

When the subject of a task performed is redacted, a court is precluded from determining whether the time spent on that task was reasonable. *ECOM Prod. Grp. Corp. v. Cox*, No. 8:21-CV-1573-WFJ-AEP, 2022 WL 13631780, at *5 (M.D. Fla. Oct. 21, 2022) (citing *People for Ethical Treatment of Animals, Inc. v. Dade City's Wild Things, Inc.*, No. 8:16-CV-2899-T-36AAS, 2020 WL 6938636, at *4 (M.D. Fla. Nov. 25, 2020)). The redactions here are heavy enough to cast doubt on whether the redacted information is actually privileged. However, if it is, the attorneys could have (1) taken the time to supplement the bills with a non-privileged description or (2) asked to submit the bills under seal for an *in camera* review when they realized the effect of their redactions. As it now stands, for many of the time entries, the Court lacks sufficient information to determine the task performed, which necessarily prohibits it from determining whether the time spent on the task was reasonable.

When faced with redacted or otherwise insufficient billing records, a court may apply an across-the-board reduction to the lodestar. *ECOM Prod. Grp. Corp.*, 2022 WL 13631780, at *5 (citing *People for Ethical Treatment of Animals, Inc.* 2020 WL 6938636, at *4−5 (reducing lodestar by 33% due, in part, to court's inability to fully assess defendant's redacted billing records) and *Dial HD, Inc. v. ClearOne Commc'ns*, 536 F. App'x 927, 931 (11th Cir. 2013) (upholding 25% across-the-board reduction where district court was unable to ascertain time spent on each task through billing records)); *see also Nicholson v. RB2, LLC*, No. 1:19-CV-344-TFM-N, 2021 WL 895602, at *3 (S.D. Ala. Mar. 9, 2021) (noting that time entry for "research" was overly vague and may be discounted) (citation omitted). Because the redactions in this case obscure the nature of the tasks

performed and render them overly vague, preventing the Court from analyzing the reasonableness of the hours expended, an across-the-board reduction of 20% of the lodestar is warranted.

### 2.    Clerical Time Entries

For the remaining entries—those that are unredacted or redacted in a manner that allows the Court to determine the task performed—many of the tasks are clerical in nature. However, a court may award fees only for time spent by attorneys or non-lawyers to the extent they perform work traditionally done by an attorney. *Yates*, 2022 WL 2308292, at *8 (citing *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) ("purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them[ ]").[4] The Court recognizes that there may be some gray area in designating a task as clerical and reasonable minds may differ as to the characterization of a task as such. Therefore, the Court carefully scrutinizes its application of this label.

---

[4] *See, e.g., Kendrick v. Broad. Media Grp. LLC*, No. 2:02 CV 1034 N, 2006 WL 2709846, at *3 (M.D. Ala. Sept. 20, 2006) (finding as clerical the tasks of traveling to courthouse to pick up jury questionnaires, adding dates to calendar, e-filing documents, and corresponding with clerk about e-filing error); *Hall v. Lowder Realty Co.*, 263 F. Supp. 2d 1352, 1365 (M.D. Ala. 2003) (finding time spent preparing to "review documents; [and] help to prepare chart exhibits" not fully compensable, in addition to reviewing and completing trial binders and unloading and organizing trial documents); *Miller v. Kenworth of Dothan, Inc.*, 117 F. Supp. 2d 1247, 1261–62 (M.D. Ala. 2000) (finding time billed for serving amended deposition notices to be clerical and stating that attorneys should generally receive no compensation for time spent on services like serving or filing documents that are appropriately performed by a messenger, secretary, or clerks and are part of law office's overhead); *see also Johnson v. TMI Mgmt. Sys., Inc.*, 2012 WL 4435304, *5 (S.D. Ala. 2012) (finding "telephone call to client re: scheduling appointment," "receipt and download of order," and "review of the Court's Order" non-compensable); *Oden v. Vilsack*, 2013 WL 4046456, at *8 (S.D. Ala. Aug. 9, 2013) (excessive time spent tracking down documents is not recoverable).

"Work that may appropriately be performed by paralegals and billed to a client or a losing party includes 'factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence.'" *Allen v. McClain EZ Pack of Alabama, Inc.*, No. 03-CV-490-WS-M, 2005 WL 1926636 (S.D. Ala. Aug. 8, 2005) (quoting *Missouri*, 491 U.S. at 288 n.10). Much of the billed work here falls short of this type of skilled work, and only a small portion of this level of work is reflected in the submitted time entries. For example, Gunnells, a paralegal, billed 0.6 hours working on a notice of appearance. Based on the Court's knowledge of this document, which typically contains one sentence and requires nothing more than changing the case caption, this is a clerical task. Even if it were not, billing 36 minutes to prepare it is unreasonable. Gunnells also billed 0.6 for drafting a letter to the clerk of court for filing the complaint, 0.4 for drafting a civil cover sheet, and 0.5 for drafting summonses. Akers, also a paralegal, billed 1.0 hour for filing the complaint in person. These are not tasks traditionally performed by attorneys.

Gunnells billed 0.3 to draft alias summonses for the Defendants, which are identical to the original summonses except for the different service addresses. Typing new addresses onto an otherwise unchanged form is a clerical task. On the same day, presumably after they were prepared, Attorney Hanna Lahr billed 0.3 to "analyze alias summonses to defendants," and she billed an additional 0.2 the following day to analyze them again after the clerk issued them. Thus, a total of 48 minutes was billed for the clerical task of what amounts to changing addresses on the summonses. Later, Gunnells billed 0.8 to call the

clerk about issuing a summons, draft a letter to the clerk about issuing the summons, and draft the summons, the last of which would have, again, required only changing the name and address of the defendant. She then billed 0.3 for speaking to the clerk's office about issuing an alias summons, 0.7 for drafting another letter to the clerk about issuing the summons, and 0.3 to draft the summons. Because this work is not work traditionally performed by attorneys, it is clerical in nature and not recoverable. *See Whitney Bank*, 2012 WL 5470131, at *7 (holding that time spent on tasks such as receiving, reviewing, and indexing documents, sending or receiving emails with documents attached, and preparing a civil cover sheet and summons are not compensable).

Additionally, much of Gunnells's time was spent calendaring deadlines. Not only are these secretarial tasks, but the time spent on them was excessive. For instance, she billed 0.6 to "update case deadlines concerning the extension of defendants' answer deadline to the complaint." Based on the Court's review of the docket and the documents related to this time entry, it appears that Gunnells billed 36 minutes to move an answer deadline from one date on the calendar to another. She then billed 0.5 to "update and calendar various deadlines in the civil case concerning defendants' response deadline and the court taking the motion for default under advisement." On this same day, the Court issued an order stating the motion for default judgment had been filed, giving Defendants a response deadline, and stating that the Court would take it under advisement without oral argument on another date. Even if adding these two dates to the calendar were not clerical in nature, it did not take 30 minutes to do it. She then billed 0.5 to "update case deadlines

concerning response deadline to the motion to dismiss" and 0.4 to calendar the deadline to file the Rule 26 report. She billed 0.3 to calendar a status conference deadline.

Gunnells billed 1.0 to enter the scheduling order deadlines on the calendar, which, considering it took less than twenty minutes to prepare a draft of the order, is unreasonable. After Gunnells spent an hour updating the deadlines from the scheduling order, Lahr billed another 0.3 to analyze it. Gunnells then billed 0.6 hours to calendar new deadlines in the amended scheduling order, which the Court finds unreasonable based on the few deadlines in the order.

Michael Ivey, another paralegal, billed 2.1 hours to compile, mark, and redact eight exhibits to Valley National's Motion for Default Judgment. Doc. 18. The Court inspected these exhibits and found that the only information redacted from the 57 pages of exhibits was the first half of two loan numbers, which required no discretion or judgment. Doc. 18 at 10–67. Not only is this a clerical task, but billing two hours to complete it is unreasonable.

Gunnells also billed 0.4 to "draft certificate of service for the civil case." Adding addresses to a certificate of service is a secretarial task, and it should not take 24 minutes to complete. Gunnells billed 0.2 to leave voicemails with the process server to check the status of serving the alias summons and another 0.3 hours to email the process server about the return of the summons, followed by 0.5 the next day to review the executed signature page and file it with the court. She billed 0.3 to obtain a court reporter for the defendants' depositions. She billed 0.5 to call the bankruptcy court and 0.6 to call the trustee's office to obtain a transcript or audio recording of the meeting of the creditors. Even *assuming* she

spent over one hour on the phone with the clerk's office and trustee's office to inquire about an audio recording, these are clerical tasks, as is the 0.3 she billed to download a link from the court to obtain the audio recording.

Gunnels billed 1.1 to "work on case management documents for court," an entry too vague for the Court to determine if the time spent is reasonable, and she billed 0.9 to "edit and file" the motion for default judgment, supporting brief, and evidentiary submission. No delineation is made between editing and filing, but filing a document with the clerk is clerical. She billed 0.6 for a telephone call with the clerk's office regarding mediation and to inquire whether appearing in person or video was required. She then billed 0.6 for the clerical tasks of emailing the court reporter to check on the status of deposition transcripts and 0.2 to email the court reporter about an invoice for deposition transcripts.

Gunnells billed 0.5 to "work" on the motion for summary judgment, "including filing with the court and effectuating service." It is not clear what she meant by "working" on the motion, but filing it with the court and effectuating service—mailing it to the pro se Defendants—are purely clerical tasks. She then billed 0.3 hours to call the judge's chambers to confirm whether the judge wanted a courtesy copy of the motion and 0.7 hours to "work on" an amended certificate of service. As far as the Court can tell, the amended certificate of service reflects that the summary judgment motion was mailed to one defendant on August 18, 2022, instead of August 17, 2022, as stated in the original certificate of service. *See* Doc. 67 at 17 and Doc. 68. Again, not only is this a clerical task, as it is not work traditionally performed by an attorney, but it should not have taken 0.7 hours (or $164) to do it.

### 3.      Excessive Time Entries

In addition to the unreasonable time billed to the clerical entries discussed above, the Court finds that many of the remaining entries are excessive, redundant, or unnecessary. For instance, Lahr billed 0.4 to "analyze a notice to file proof of claim" and 0.5 hours to "analyze an order granting relief from stay." Given the Court's familiarity with these documents, the time expended seems unreasonable. Lahr billed 0.2 to "analyze docketed filings in lawsuit against guarantors" when the only documents on the docket were the complaint and corporate disclosure—both of which she drafted—and a notice that the case was assigned to a magistrate judge. Gunnells then billed 0.2 for "analysis of new filings [redacted]" when, again, there were no new filings on the docket.

Gunnells billed 0.5 to prepare a corporate disclosure statement and shortly after billed 0.5 to work on an amended disclosure statement. Lahr billed 0.6 to "finalize" this same document. The Court has compared the two documents. The amended document omits four names and adds additional names to the list of entities being disclosed. Typing or deleting names onto a list is a clerical task; however, to the extent these time entries included more than typing (despite the narrative description), the Court finds that 1.1 hours to prepare the amended corporate disclosure in this case unreasonable.

When Defendants filed a motion asking for a status conference to be reset due to COVID symptoms, Lahr billed 0.3 hours to analyze the three substantive sentences in the motion. She then billed 0.2 hours to "analyze deficiency notice to defendants." As any lawyer practicing in federal court knows, this document is routinely issued when a party fails to file a corporate disclosure statement. The notices are practically identical in every

case, and nothing in the document warrants "analysis." It simply informs a party they have ten days to file the required disclosure. She later billed 0.5 to analyze a second notice of deficiency sent to Defendants. Again, Lahr has undoubtedly seen this same document numerous times, and the sentence giving Defendants a ten-day deadline could not have taken 30 minutes to "analyze." Gunnells billed 0.2 for the secretarial task of calendaring this deadline. Lahr then billed 0.2 to analyze the order giving Defendants a final deadline to file a corporate disclosure statement, and Gunnells billed a full half hour to update the calendar with this deadline. When Defendants finally filed their corporate disclosure, Lahr billed 0.3 to "analyze" the document, which included a new address and *stated there were no reportable entities*. The entire document takes less than one minute to read and contains nothing warranting "analysis."

Lahr billed 0.2 to analyze an order telling Defendants to provide the court with their current phone number and 0.5 hours to "analyze order setting status conference on Rule 26(f) report." Because this two-sentence order simply set a date for a status conference and notified the parties that the judge's staff would contact them with the information to join the conference call, it is difficult to conceive how it required half an hour's analysis.

Lahr billed 0.4 to analyze an order extending the deadline for Valley National to amend its pleadings and file the amended complaint. Gunnells then billed 0.2 to update the deadline. The order in question contains two substantive sentences: "The Motion to Extend the Deadline to Amend the Pleadings is GRANTED, and the deadline is extended to October 28, 2021, for the limited purpose of allowing the Plaintiff to file the Amended Complaint submitted with its motion. The Motion to Amend the Complaint is GRANTED,

and Plaintiff may file its Amended Complaint by October 28, 2021." Again, this document did not require 24 minutes of analysis, and calendaring the deadlines is a clerical task.

On November 19, 2021, Anna Akers, an associate, billed 1.0 for "analysis of service of amended complaint [redacted]." At this point, a summons had been issued to QHHC but the docket reflects it had not been served. In fact, on this date, there were no docket entries after the issuance of the summons on October 25. The time entry is redacted, so it is possible that the time spent on this task was reasonable. However, considering the amended complaint had not been served and there was, accordingly, nothing to analyze, 1.0 hour seems unreasonable.

Lahr billed 0.5 to review a motion filed by the Defendants asking for an extension to respond to discovery. Having inspected this document, the Court believes it could take no more than five minutes to read and fully understand. On September 19, 2022, she billed 1.0 to "analyze order setting deadlines." This three-page order set a deadline to file a supplemental declaration, set response and reply deadlines for the summary judgment motion, and provided instructions to Defendants responding to the summary judgment motion. Billing 1.0 hour for an analysis of this order is unreasonable, as it could have taken no more than ten minutes to read and comprehend.

The above is not an exhaustive list of the excessive, redundant, and unnecessary time entries included in Valley National's invoices. There could be explanations for the billing entries that might mitigate the conclusion that they are the excessive, redundant, and unnecessary (e.g. the narratives could be poorly or insufficiently drafted and additional work performed may not be reflected), but the Court must analyze what is before it. The

Court expects, based on its review, that a more tedious examination would reveal additional time entries warranting reduction; however, in place of performing an hour-by-hour analysis and based on the level of unreasonable billing presented in the above time entries, the Court finds that a 20% across-the-board cut is appropriate.

### 4.    Reductions to the Lodestar

Based on the clerical nature of the paralegal billing entries, the Court finds that an across-the-board cut of 60% of the lodestar for paralegal time entries is appropriate. With a 90.1 hours billed at an hourly rate of $125, the lodestar is $11,262.50. A 60% reduction in this lodestar leaves $4,505.00. Based on the hourly rates billed by the attorneys and the number of hours spent by each attorney, the lodestar for the attorneys' time is $66,533.50,[5] bringing the total lodestar to $71,038.50. Applying a 20% reduction ($14,207.70) for the redactions that prevented the Court from evaluating time entries and a 20% reduction for excessive, redundant, and unnecessary billing ($14,207.70), the remaining recoverable fee is $42,623.10.

### C.    EXPENSES

Valley National also seeks reimbursement for $6,667.18 in expenses. Although various expenses are interspersed throughout the individual invoices, Valley National's attorneys failed to include an itemized list of expenses separate from the attorney's fees. Therefore, in order to determine the nature of the expenses claim, the Court was required

---

[5] Because Valley National did not submit itemized billing records for the time billed after November 30, 2022, it was impossible for the Court to evaluate the reasonableness of these time entries. Accordingly, those attorneys' fees are not included in this total.

to sift through three years of bills to extract and itemize the expenses. Although most of the claimed expenses are self-explanatory and appear to be reasonable and necessary for this litigation, there is no explanation for the claimed expenses of $37.00 for "photocopies" and $170.00 for "investigator expense." With no further description of these expenses, the Court cannot determine if these expenses are reasonable. Accordingly, the undersigned will recommend that they be disallowed and that Valley National be allowed to recover $6,460.18 in expenses.

## IV.    CONCLUSION

For the above reasons, the Magistrate Judge RECOMMENDS the following:

1.      Valley National be awarded interest in the amount of $92,639.27 through May 3, 2023, plus accruing interest at the rate of $90.79 per diem after May 3; and

2.      Valley National be awarded $42,623.10 in reasonable attorneys' fees and $6,460.18 in expenses.

Further, it is ORDERED that by **May 17, 2023**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered by the Court. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District

Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *See* 11TH CIR. R. 3-1.

       Done this 3rd day of May, 2023.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE